```
                    UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA

                          WESTERN DIVISION
```

RAYMOND RENTERIA,              )
                               Petitioner,   ) Case No. CV 06-1060-AHS(AJW)
              v.             )
M. VEAL, Acting Warden,        ) REPORT AND RECOMMENDATION
                                    ) OF MAGISTRATE JUDGE
                         Respondent.   )
_____)

     In 1974, when petitioner was twenty years old, he was convicted of first degree murder. Petitioner was sentenced to state prison for a term of seven years to life, plus five years for the use of a firearm. [Petition at 2].

     Nearly thirty years later, on December 4, 2003, petitioner appeared before the Board of Prison Terms ("Board") for a parole suitability hearing. The Board issued a split decision, with one Commissioner concluding that petitioner was suitable for parole because he would not pose an unreasonable risk of danger to the public if released, and the other Commissioner concluding that petitioner was unsuitable for parole. [Lodgment 2 at 74-86]. On February 17, 2004, the en banc Board found petitioner unsuitable for parole. [Lodgment 3].

Petitioner challenged the Board's decision in a habeas petition filed in the Los Angeles County Superior Court. That court denied the petition, finding that the Board's decision was supported by "some evidence." [Lodgment 7]. Both the California Court of Appeal and the California Supreme Court denied petitioner's habeas petitions without explanation. [Lodgments 9 & 11].

In his petition for a writ of habeas corpus filed in this Court, petitioner challenges the Board's decision. For the following reasons, the petition should be granted.

**Background**

The Board summarized petitioner's commitment offense as follows:

> On January 19, 1974, Renteria and a companion attended a birthday party in Fairmont California, with approximately 40 to 50 other people. Among the guests were members of the Renteria Gang. The accompanying Barios Tres, B-A-R-I-O-S, Tres, T-R-E-S, the rival gang members [sic]. During the evening, several confrontations between rival gang members erupted and resulted in a fight between Renteria and Johnny Tores, that's T-O-R-E-S. According to official records, Renteria shot Mr. Tores in the chest. Tores died as a result of the injury.

[Lodgment 2 at 7-8]. The Board also read into the record petitioner's version of events:

> Renteria denies shooting Tores, as he has since the fatal day. However, Renteria accepts full responsibility for Tores' untimely death in that he feels that Mr. Tores would have lived beyond that date had Renteria not attended the party. Renteria accepts responsibility for his actions and

1      expressed great remorse for the victim and his family.
2 [Lodgment 2 at 8].
3      The Board explained that the Commissioner who found petitioner
4 suitable for parole based that decision on the following factors.
5 Petitioner had "enhanced his programming through educational
6 programs," had earned his GED, and had completed college courses.  In
7 addition, petitioner had participated in numerous self-help programs,
8 including a long-term involvement with Narcotics Anonymous.  He had
9 completed vocational work in janitorial and computers. Petitioner
10 worked in "one of the more respected jobs in the prison," and
11 performed highly technical construction work.  Petitioner had
12 realistic parole plans, including a place to live and family support.
13 He had maintained positive institutional behavior, and had been
14 disciplinary free for the last 20 years.  Petitioner also showed signs
15 of remorse, and understood the nature and magnitude of his offense.
16 Petitioner's Correctional Counselor prepared a "glowing" report
17 opining that petitioner posed a low degree of threat if released, and
18 based that opinion on petitioner's excellent prison adjustment, family
19 support, meticulously developed parole plans, positive demeanor,
20 strong network of resources, and tremendous educational and vocational
21 gains.   In  addition, petitioner's psychological  reports  were
22 favorable, the most recent one opining that petitioner would pose a
23 low risk of danger if released. [Lodgment 2 at 37, 39-41, 75-79]. The
24 Board then set petitioner's term at 84 months (after crediting him
25 with 84 months of good time sentence credits),[1] which meant that

---

[1] Under California law, once a life prisoner is found suitable for parole, his or her release date is set by reference to a "matrix" of factual variables. 15 Cal.Code Regs. § 2403(a)-(c); see In re Dannenberg, 34 Cal.4th 1061, 1078-1079 (2005), cert. denied,

3

1  petitioner's release date would have been some time in 1981 – 29 years
2  ago. [Lodgment 2 at 80-81].
3       The Board next explained that the Commissioner who found
4  petitioner unsuitable for parole based his decision on petitioner's
5  lack of a firm job offer.  In addition, that Commissioner expressed
6  concern about an older psychological evaluation which mentioned
7  petitioner's prior substance abuse, and questioned "whether or not
8  [petitioner] would revert back to it."  [Lodgment 2 at 83-85].
9       The California Superior Court rejected the Board's finding that
10 petitioner was required to have a job offer in order to have realistic
11 parole plans.  As the state court explained, petitioner had completed
12 a number of different trades and had upgraded vocationally since his
13 incarceration.  Thus, he had developed marketable skills that could be
14 put to use upon his release and he was not required to do more.  In
15 addition, the state court concluded that petitioner had clear parole
16 plans, both in Sacramento with his wife and in Los Angeles. [Lodgment
17 7 at 4-5].  With regard to the other reason provided by the Board –
18 the psychological report – the Superior Court explained that the
19 report was neither discussed during the hearing nor provided for the
20 court's review.  In addition, it appeared that petitioner had not been
21 provided an adequate opportunity to address that report during the
22 proceedings. [Lodgment 7 at 5].  Nevertheless, despite rejecting both
23 of the reasons provided by the Board for finding petitioner unsuitable
24 for parole, the Superior Court concluded, "there is otherwise 'some
25 evidence' to support the Board's conclusion Petitioner is unsuitable."
26 [Lodgment 7 at 5].  The Superior Court, however, did not explain what

---

28  546 U.S. 844 (2005).

4

that evidence was.  In a footnote, that court "note[d] that the record reflects the Board could have additionally relied upon the commitment offense to find petitioner unsuitable in that multiple victims were injured or killed, as well as Petitioner's serious disciplinary record while incarcerated." [Lodgment 7 at 5 n. 5].

**Petitioner's contentions**

Petitioner alleges the following grounds for relief:

1.  The denial of parole was arbitrary and not supported by the requisite evidence, thereby violating petitioner's right to due process. [Petition at 5].

2.  The denial of parole violated petitioner's rights under the Americans with Disabilities Act to be free of discrimination on the basis of his history of substance abuse. [Petition at 5].

3.  The Board's application of the law violates petitioner's "right to equal protection with respect to similarly situated prisoners." [Petition at 6].

4.  The Board's application of harsher parole standards than those in effect at the time petitioner's offense was committed violates the proscription against ex post fact laws. [Petition at 6].

**Standard of review**

The Ninth Circuit recently clarified the standard of review applicable to habeas petitions challenging parole decisions.  In Hayward v. Marshall, 603 F.3d 546, 561-564 (9th Cir. 2010) (en banc), the court held that due process challenges to California courts' application of the "some evidence" requirement are cognizable on federal habeas review. See Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010); Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010) (per curiam).  Under the standard announced in Hayward, a federal

court must determine "whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Cooke, 606 F.3d at 1213 (quoting Hayward, 603 F.3d at 563 (quoting 28 U.S.C. §2254(d)(1)-(2))).

To determine whether this decision was an unreasonable application of the California "some evidence" requirement, or was based on an unreasonable determination of the facts in light of the evidence, the Court must first examine the nature and scope of the federally enforceable liberty interest created by California's "some evidence" requirement.

"California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state." Cooke, 606 F.3d at 1213. The California Supreme Court has explained that the "some evidence" requirement imposes substantive rather than purely procedural constraints on state officials' discretion to grant or deny parole. In re Lawrence, 44 Cal.4th 1181, 1210-1211 (2008). Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole," and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety." In re Lawrence, 44 Cal.4th at 1210-1211. Accordingly, for a reviewing court "the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety." Cooke, 606 F.3d at 1214 (quoting In re Lawrence, 44 Cal.4th at 1212); see also Hayward, 603 F.3d at 562

6

(noting that "'some evidence' of future dangerousness is indeed a state sine qua non for denial of parole in California"). In sum, a reviewing court must consider "whether the identified facts are <u>probative</u> to the central issue of <u>current</u> dangerousness when considered in light of the full record before the Board or the Governor." <u>Cooke</u>, 606 F.3d at 1214 (quoting <u>In re Lawrence</u>, 44 Cal.4th at 1221) (emphasis in original).

## Discussion

The last reasoned state court decision addressing petitioner's claim – the California Superior Court[2] – found that the record contained some evidence supporting the Board's finding that petitioner was unsuitable for parole – namely, (1) the offense was especially heinous because multiple victims were injured or killed and (2) petitioner's serious disciplinary record while incarcerated. In the circumstances of this case, however, these reasons do not amount to some evidence that petitioner poses an unreasonable risk of danger if released.

**1. Commitment offense**

The California Supreme Court has expressly rejected the argument "that the aggravated circumstances of a commitment offense inherently establish current dangerousness." <u>In re Lawrence</u>, 44 Cal.4th at 1213-1214. Although the Board or the Governor may consider the circumstances of the commitment offense when making a decision to

---

[2] The California Court of Appeal and California Supreme Court denied petitioner's claims without explanation. Where, as here, a higher state court has denied a claim without explanation, federal courts "look through" that denial to the last reasoned state decision. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-806 (1991); <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), <u>cert. denied</u>, 534 U.S. 944 (2001).

7

grant or deny parole,

> the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Cooke, 606 F.3d at 1214 (quoting In re Lawrence, 44 Cal.4th at 1214); see also In re Shaputis, 44 Cal.4th 1241, 1255 (2008). In other words:

> [T]he determination whether an inmate poses a current danger is not dependent upon whether his or her commitment offense is more or less egregious than other, similar crimes. Nor is it dependent solely upon whether the circumstances of the offense exhibit viciousness above the minimum elements required for conviction of that offense. Rather, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Lawrence, 44 Cal.4th at 1221.[3]

The state court found that the commitment offense supported a conclusion that petitioner was unsuitable for parole because multiple victims were injured or killed. See generally, 15 Cal. Code Regs. § 2281(c)(1)(A)-(E). The record, however, does not support the state court's conclusion. Petitioner was convicted of the murder of Tores. Another person – Oscar Palacios – was charged with shooting and killing Refugio Rivera. [Lodgment 1 at 6 (probation report); Lodgment

---

[3] Similarly, as one district court has explained:
> Whether the facts of the crime of conviction, or other unchanged criteria, affect the parole eligibility decision can only be predicated on the "predictive value" of the unchanged circumstance. Otherwise, if the unchanged circumstance per se can be used to deny parole eligibility, sentencing is taken out of the hands of the judge and totally reposited in the hands of the BPT. That is, parole eligibility could be indefinitely and forever delayed based on the nature of the crime even though the sentence given set forth the possibility of parole – a sentence given with the facts of the crime fresh in the mind of the judge. While it would not be a constitutional violation to forego parole altogether for certain crimes, what the state cannot constitutionally do is have a sham system where the judge promises the possibility of parole, but because of the nature of the crime, the BPT effectively deletes such from the system. Nor can a parole system, where parole is mandated to be determined on someone's future potential to harm the community, constitutionally exist where despite 20 or more years of prison life which indicates the absence of danger to the community in the future, the BPT commissioners['] revulsion towards the crime itself, or some other unchanged circumstance, constitutes the alpha and omega of the decision. Nobody elected the BPT commissioners as sentencing judges. Rather, in some realistic way, the facts of the unchanged circumstance must indicate a present danger to the community if released, and this can only be assessed not in a vacuum, after four or five eligibility hearings, but counterpoised against the backdrop of prison events.

Bair v. Folsom State Prison, 2005 WL 2219220, *12 n.3 (E.D.Cal. 2005), report and recommendation adopted by, 2005 WL 3081634 (E.D.Cal. 2005), aff'd, 235 Fed.Appx. 584 (9th Cir. 2007).

2 at 53]. Noting suggest that petitioner's offense can be deemed especially heinous under California law based upon a crime committed by someone else. Thus, the state court's conclusion about the severity of the commitment offense is not supported by the record.

Even assuming that the state court's characterization of petitioner's commitment offense is accurate, the passage of 29 years (now 36 years) since that offense and petitioner's positive post-commitment conduct have rendered the offense lacking in predictive value. The state court did not explain how the circumstances of petitioner's commitment offense – when considered in light of other facts in the record – is predictive of his current risk of danger if released, as California law requires. See In re Lawrence, 44 Cal.4th at 1221. As set forth above, the record in this case contains extensive evidence of petitioner's rehabilitation, including positive psychological reports indicating that petitioner is not dangerous, extensive self-improvement through completion of educational and vocational programs, and two decades of disciplinary-free incarceration. At this point, petitioner's commitment offense does not constitute some evidence that petitioner is currently dangerousness. See Cooke, 606 F.3d at 1216 (holding that standing alone, the commitment offense did not constitute the requisite evidence of current dangerousness because California law requires that something else in the record must indicate that the petitioner was currently dangerous); Vincent v. Mendoza-Powers, 2010 WL 143455, *20 (C.D.Cal. 2010)("When properly viewed in conjunction with petitioner's pre- and post-offense history, and his current demeanor and mental state, the Court finds that there is nothing about the nature of the commitment offense that remains probative of petitioner's current

dangerousness."); <u>Rosenkrantz v. Marshall</u>, 444 F.Supp.2d 1063, 1081-1084 (C.D.Cal. 2006)(granting habeas relief, finding that "continued reliance on such unchanging circumstances - after nearly two decades of incarceration and half a dozen parole suitability hearings - violates due process because petitioner's commitment offense has become such an unreliable predictor of his present and future dangerousness that it does not satisfy the 'some evidence' standard. After nearly twenty years of rehabilitation, the ability to predict a prisoner's future dangerousness based simply on the circumstances of his or her crime is nil."); <u>In re Elkins</u>, 144 Cal.App.4th 475, 498 (2006) ("Given the lapse of 26 years and the exemplary rehabilitative gains made by Elkins over that time, continued reliance on these aggravating facts of the crime no longer amount to 'some evidence' supporting denial of parole."); <u>In re Lee</u>, 143 Cal.App.4th 1400, 1412 (2006) ("Besides not being especially atrocious, heinous or callous, Lee's crimes have little, if any, predictive value for future criminality. Simply from the passing of time, Lee's crimes almost 20 years ago have lost much of their usefulness in foreseeing the likelihood of future offenses than if he had committed them five or ten years ago.").

**2. Disciplinary history**

Petitioner suffered multiple 115 disciplinary violations for misconduct such as possessing contraband, disobeying orders, and violent behavior including physical altercations. [Lodgment 2 at 38-39]. All of petitioner's prison misconduct occurred during the first nine years of petitioner's incarceration. Since 1983, however, petitioner has not had any 115 disciplinary violations. At the time of the parole hearing, petitioner was 49 years old, and twenty years

had lapsed since his last disciplinary violation.

While the state court correctly noted that petitioner had a "serious disciplinary record," it failed to make any express findings about how that two-decade old record was probative of petitioner's current dangerousness. Indeed, the record supports the contrary conclusion. In particular, the 2003 psychiatric evaluation prepared by Robert Sargent, Ph.D., considered many factors, including petitioner's disciplinary record, before concluding that petitioner posed a lower than average risk for future violence if released to the community. [Lodgment 2 at 39-40; Lodgment 5]. The Board's decision reflects a similarly favorable evaluation of petitioner's institutional behavior, notwithstanding petitioner's early disciplinary record. As noted, one Commissioner found petitioner's institutional behavior actually supported granting parole. Further, even the Commissioner who found petitioner unsuitable for parole did not cite petitioner's prior disciplinary infractions as a reason for denying parole, but apparently considered the absence of any prison misconduct during the preceding 20 years a laudatory achievement. [See Lodgment 7 at 38-39].

Because neither the Board nor the state court explained why petitioner's disciplinary record suggested that he was currently dangerous despite the psychological report to the contrary, petitioner's two-decade old disciplinary violations do not constitute some evidence supporting the denial of parole. See Cooke, 606 F.3d at 1215 (holding that where an inmate received only two disciplinary infractions for non-violent misconduct during 11 years of incarceration, such misconduct could not reasonably be viewed as evidence that the inmate posed an unreasonable risk to public safety,

and this was especially as he had been discipline-free for nearly a decade); Perez v. Curry, 2010 WL 1532340,* 4 (N.D.Cal. 2010) (finding that a 20 year old disciplinary violation, even though serious, did not constitute "some evidence" that the petitioner would be a danger to society if released); Murr v. Marshall, 673 F.Supp.2d 1028, 1050-1051 (C.D.Cal. 2009) (finding that a "deplorable" record of disciplinary conduct during the petitioner's early years in prison, including involvement in a stabbing incident, did not amount to some evidence of current dangerousness where the petitioner had been discipline-free for 13 years); In re Barker, 151 Cal.App.4th 346, 368-369 (holding that a disciplinary record more than 10 years old was not sufficient to support a finding of unsuitability for parole).

**Conclusion**

California's "some evidence" test is not satisfied because there is no evidence in the record demonstrating that petitioner poses a current danger to society if released, and the state court's conclusion to the contrary was an unreasonable application of state law and was based on an unreasonable determination of the facts in light of the evidence. See Cooke, 606 F.3d at 1216 (granting relief under the standard announced in Hayward because none of the factors relied upon by the Board supported a finding that the petitioner was currently dangerous). Therefore, the petition should be granted.[4]

As discussed, at the conclusion of the hearing, the Board calculated petitioner's appropriate sentence – that is, 168 months. [Lodgment 2 at 80]. Based upon the sentence credits he had earned, petitioner's sentence was reduced by 84 months, so he was required to

---

[4] Since petitioner is entitled to relief on his due process claim, the Court need not address petitioner's other claims.

13

serve 84 months (or 7 years) in prison. [Lodgment 2 at 81]. According to the Board's own calculation, petitioner's parole date would have passed sometime in 1981. As of the date of this report and recommendation, petitioner has served more than 36 years in prison – longer than the term the Board itself determined was appropriate to fairly punish him, and decades longer than the parole date that was calculated under state law.

Because petitioner's parole date already has been determined under California law and that date has long passed, respondent should be directed to release petitioner on parole within twenty-eight (28) days of the date of entry of judgment. Pirtle v. California Board of Prison Terms, ___ F.3d ___, 2010 WL 2732888, *8 (9th Cir. 2010) (holding that correct relief for an improper denial of parole included ordering the Board to set a parole date and release the petitioner); McQuillion v. Duncan, 342 F.3d 1012, 1015-1016 (9th Cir. 2003) (affirming grant of habeas corpus relief on appeal after remand, and explaining that the proper relief is immediate release rather than remand for further parole proceedings where no evidence in the record supported the BPT's determination that the petitioner was not suitable for parole).

Dated: July 21, 2010

_____
Andrew J. Wistrich
United States Magistrate Judge

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **RAYMOND RENTERIA,** ) | Case No. CV 06-1060-AHS(AJW) |
| ) | |
| Petitioner, ) | |
| ) | **[PROPOSED]** |
| v. ) | **JUDGMENT** |
| ) | |
| **M. VEAL, Acting Warden,** ) | |
| ) | |
| Respondent. ) | |
| _____) | |

It is hereby adjudged that the petition for a writ of habeas corpus is granted, and respondent is directed to release petitioner on parole within twenty-eight (28) days of the date of entry of judgment.

Dated: _____

_____
Alicemarie H. Stotler
United States District Judge